Filed 2/25/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
| --- | --- |
| JAMES BAE,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>T.D. SERVICE COMPANY,<br><br>　　　　Defendant and Respondent. | B262921<br>(Los Angeles County<br>Super. Ct. No. BC450163) |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Affirmed.

　　　　Law Offices of Deborah R. Bronner and Deborah R. Bronner for Plaintiff and Appellant.

　　　　The Dreyfuss Firm and Lawrence J. Dreyfuss for Defendant and Respondent.

In the underlying action, appellant James Bae and a corporation related to him asserted claims arising from a foreclosure sale against several defendants, including respondent T.D. Service Company of Arizona.  Respondent filed an unchallenged declaration of nonmonetary status under Civil Code section 2941*l*, asserting that it had been named as a defendant solely in its capacity as trustee under the pertinent deed of trust, and not due to any wrongful conduct in its performance as trustee.  After respondent filed no answer in the action, the clerk entered respondent's default, and the trial court issued a default judgment against respondent awarding appellant $3,000,000 in damages.  Respondent filed a motion for relief from the default and default judgment, which the trial court granted.  Appellant contends the court erred in setting aside the default and default judgment.  We reject his challenges to that ruling and affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, appellant initiated the underlying action.  The original complaint identified the plaintiff as "James Bae dba C & H Natural Food," and named as defendants Center Bank and respondent.[1]  The complaint alleged the following facts:  Center Bank provided appellant with a mortgage secured by real property located in Glen Ivy, and respondent acted as the trustee company for Center Bank.  In August 2010, an involuntary chapter 7 bankruptcy petition was filed regarding the property (11 U.S.C. § 701 et seq.).  In September 2010, despite

---

[1]     Ordinarily, the designation "d.b.a." in connection with an individual indicates that the individual operates a business and is liable for its obligations. (See *Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1200; *Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348-1349 and the cases cited therein.)

2

knowledge of the bankruptcy proceeding, the defendants issued a notice of a foreclosure sale without seeking relief from the bankruptcy stay. Center Bank bought the property at the foreclosure sale, which occurred in November 2010. The complaint asserted claims for wrongful foreclosure, violation of a bankruptcy stay, failure to provide notice of default on a mortgage (Civ. Code, § 2923.5), and tortious infliction of emotional distress.

On January 27, 2011, respondent filed a "declaration of nonmonetary status" pursuant to Civil Code section 2924*l*, which sets forth a procedure by which the trustee to a deed of trust may avoid liability for monetary awards relating to a nonjudicial foreclosure. (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 350-351 (*Kachlon*).) To invoke the procedure, "[t]he trustee must file a declaration of nonmonetary status stating that it reasonably believes it was named as a defendant solely in its capacity as trustee, and not for misconduct in its duties. If no party timely objects, 'the trustee shall not be required to participate any further in the action or proceeding, [and] shall not be subject to any monetary awards as and for damages, attorneys' fees or costs.'" (*Id*. at p. 351, quoting Civ. Code, § 2924*l*, subd. (d), italics omitted.)

Respondent's declaration under Civil Code section 2924l disclaimed any financial interest in the underlying promissory note and real property, and asserted respondent's "reasonable belief" that it had been named as a defendant solely because "it was the trustee or agent of the trustee . . . on the subject [d]eed of [t]rust . . . ." The declaration was executed under penalty of perjury by attorney Richard S. Stone, respondent's counsel. Appellant filed no objection to the declaration, and never attempted to challenge or attack it in subsequent proceedings.

In March 2011, a first amended complaint was filed. The complaint identified the plaintiff as "C & H Natural Food, a Nevada Corporation" (C & H), and asserted claims for conversion, negligence, and civil conspiracy against respondent, Center Bank, and LWL Investment Group, LLC (LWL). The complaint alleged that in 2007, FX Global, Inc., also known as SG Global, Inc. (SG) bought the Glen Ivy property. In order to do so, SG obtained a $5 million loan from Center Bank secured by a promissory note and trust deed. Later, in 2009, appellant provided SG with a $5 million loan secured by a promissory note and second deed of trust on the property. In October 2010, shortly after a chapter 7 bankruptcy petition was filed regarding SG, Center Bank assigned its deed of trust to LWL, and respondent was hired as the trustee company for Center Bank and LWL. According to the complaint, in November 2010, notwithstanding the bankruptcy proceedings and stay, LWL and respondent "forced" a foreclosure sale, at which LWL bought the property.

In July 2011, C & H filed two requests for the entry of respondent's default by the superior court clerk. The requests were mailed to respondent, but no copy was mailed to respondent's counsel. On July 21, 2011, the clerk entered respondent's default.[2]

In August 2012, C & H requested a default judgment, seeking damages totaling $3,000,000. Accompanying C & H's showing in support of the default judgment was a declaration from appellant, who identified himself as "the principal" of C & H. Also accompanying the showing was a declaration from C & H's counsel, notwithstanding respondent's filing of its statement of nonmonetary

---

[2] The clerk declined to enter respondent's default pursuant to C & H's initial request, which was filed on July 15, 2011.

4

interest, declared that: "To date, [respondent] has not appeared in this action." No declaration was filed stating that C & H's request for default judgment had been mailed to respondent or its counsel. On August 3, 2012, the trial court entered a default judgment in favor of C & H and against respondent awarding C & H $3,000,000 in damages and $460 in costs. Nothing in the record suggests the judgment was served on respondent or its counsel.

On November 20, 2014, respondent filed a motion to set aside the default and default judgment on the basis of Code of Civil Procedure section 128, subdivision (a)(8), which authorizes the superior court "[t]o amend and control its . . . orders so as to make them conform to law and justice."[3] Respondent contended its unchallenged declaration under Civil Code section 2924*l* excused it from participation in the action and shielded it from liability for damages. Respondent further maintained that C & H's service of the first amended complaint was defective, and that neither C & H's request for entry of default nor its request for a default judgment nor the default judgment itself were mailed to respondent's counsel of record.

Supporting the motion was a declaration from respondent's attorney Stone, who stated: "I first learned of the default and the default judgment against respondent on November 3, 2014, when I received notice that [C & H] had levied on [respondent's] accounts . . . . Even though I was identified as [respondent's] counsel of record on the [Civil Code] section 2924*l* declaration . . . , I did not receive any of the documents filed with the [c]ourt after that declaration . . . was filed."

---

[3] Respondent's motion incorrectly identified that provision as Code of Civil Procedure section 128.5, subdivision (a)(8).

5

In opposing the motion, C & H maintained that subdivision (a)(8) of Code of Civil Procedure section 128 afforded no basis for relief from the default and default judgment. C & H further argued that the motion was untimely under section 473, subdivision (b), and section 473.5 of the Code of Civil Procedure, and that respondent could demonstrate no basis for relief on equitable grounds.

On January 23, 2015, following a hearing, the trial court granted respondent's motion, and set aside the default and default judgment. This appeal followed.

## DISCUSSION

Appellant contends the trial court erred in granting relief from the default and default judgment. We disagree.

A. *Relief from a Default and Default Judgment*

"Although a trial court has discretion to vacate the entry of a default or subsequent judgment, this discretion may be exercised only after the party seeking relief has shown that there is a proper ground for relief, and that the party has raised that ground in a procedurally proper manner, within any applicable time limits." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495 (*Cruz*).) Code of Civil Procedure section 473 and 473.5 authorize challenges to defaults and default judgments on various grounds within certain periods.

Under Code of Civil Procedure section 473, subdivision (b), a party may seek relief on the grounds of "mistake, inadvertence, surprise, or excusable neglect" within "a reasonable time," but not more than six months after the entry of the default or default judgment. Code of Civil Procedure section 473.5 permits the court to set aside a default or default judgment if the defendant, "through no

6

inexcusable fault of his own, [received] no actual notice" of the action, provided that relief is requested within a reasonable time, but not more two years after the entry of the default judgment. (Judicial Council of Cal., com., reprinted at 15 West's Ann. Code Civ., Proc. (1979 ed.) foll. § 473.5, pp. 398-399.) In addition, under subdivision (d) of Code of Civil Procedure section 473, the court may set aside orders and judgments that are "'void,'" including orders and judgments void for want of fundamental jurisdiction or personal jurisdiction. (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249.) In some instances, that relief is subject to the time period specified in Code of Civil Procedure section 473.5, for example, when the party seeking relief maintains that the judgment, although facially valid, is void due to lack of proper service of process. (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 301, fn. 3.)

Apart from any statute, courts have the inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*); *Olivera v. Grace* (1942) 19 Cal.2d 570, 575.) "Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.'" (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 (*Kulchar*); see 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 225, p. 832.) In contrast, the term "extrinsic mistake" is "broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits. [Citations.] 'Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended . . . .'" (*Rappleyea*, *supra*, 8 Cal.4th at p. 981, quoting *Kulchar*, *supra*, 1 Cal.3d at pp. 471-472.)

7

A party may seek equitable relief from a default and default judgment by filing a motion in the pertinent action or initiating an independent action. (*Rappleyea*, *supra*, 8 Cal.4th at p. 981; *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228-1229.) "[A] motion brought to do so may be made on such ground even though the statutory period [for relief under Code of Civil Procedure section 473, subdivision (b)] has run." (*Gorham*, *supra*, 186 Cal.App.4th at p. 1229.) Because a motion for equitable relief is "direct," rather than "collateral," extrinsic fraud or mistake may be demonstrated by evidence not included in the judgment roll or record relating to the judgment.[4] (*Munoz v. Lopez* (1969) 275 Cal.App.2d 178, 183-184.)

Here, our focus is on the equitable doctrine of extrinsic mistake. As respondent filed its motion to set aside the default and default judgment more than two years after the entry of the default judgment, the trial court could not order relief under Code of Civil Procedure section 473, subdivision (b), or 473.5. Although the record does not disclose why the court set aside the default and default judgment, we are obliged to uphold that discretionary ruling, "if . . . correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) As explained below (see pt. B. of the Discussion, *post*), the ruling was proper on the basis of equitable mistake.[5]

---

[4]   "The judgment roll consists of the pleadings and certain other formal papers filed with the clerk of the trial court." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 667, p. 738.)

[5]   We recognize that respondent's motion did not refer to the doctrine of equitable mistake, and instead incorrectly relied on subdivision (a)(8) of Code of Civil Procedure section 128, which provides no basis for relief from the default and default judgment (see *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 148). However, an appellate court may permit the assertion of a new theory of the case *(Fn. is continued on next page.)*

Under the doctrine of extrinsic mistake, relief from a default and default judgment is potentially available when the clerk or trial court erred in entering them. The procedure for obtaining a default judgment ordinarily applicable in all actions -- other than those for the recovery of a determinate amount of money based on a contract or judgment -- is set forth in subdivision (b) of Code of Civil Procedure section 585, as well as sections 580 and 587 of that code. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 533 (*Ferraro*); *Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1260.) Under that procedure, the plaintiff may request that the clerk enter the defendant's default when the defendant fails to answer, demur, or give notice of certain specified motions. (Code Civ. Proc., § 585, subd. (b); *Ely*, *supra*, 224 Cal.App.3d at p. 1260.) In applying for the default, the plaintiff is obliged to file an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record (if any). (Code Civ. Proc., § 587; *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 100 (*Harris*).) Following the clerk's entry of default, upon the plaintiff's application, the trial court may enter a default judgment after a suitable evidentiary showing by the plaintiff. (Code Civ. Proc., §§ 580, 585, subd. (b); *Ely*, *supra*, 224 Cal.App.3d at p. 1260.)

on appeal when "the facts were clearly put at issue at trial and are undisputed on appeal." (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.)

Those conditions are satisfied here. Before the trial court, appellant argued that although equitable relief was potentially available on theories of extrinsic fraud and mistake, respondent could demonstrate no basis for equitable relief. On appeal, the parties have discussed the propriety of affirming the trial court's ruling on the basis of extrinsic mistake, and appellant has not suggested that he was denied an opportunity to present relevant evidence. As explained below (see pt. C. of the Discussion, *post*), the facts material to the application of the doctrine of extrinsic mistake are undisputed.

Defaults and default judgments are vulnerable to attack when the clerk or trial court errs in the course of the procedure described above. The clerk's authority to enter a default is limited by the applicable statutes (*Westpost Oil Co. v. Garrison* (1971) 19 Cal.App.3d 974, 977-978), which impose a ministerial duty on the clerk (*Bristol Convalescent Hospital v. Stone* (1968) 258 Cal.App.2d 848, 862 (*Bristol Convalescent Hospital*)).[6] Similarly, the statutes limit the trial court's authority to enter a default judgment. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862-864.) Thus, some errors by the clerk or trial court render defaults and default judgments void -- rather than merely voidable -- and subject to attack as such.[7] (*Baird v. Smith* (1932) 216 Cal. 408, 412-413; *Burnett v. King* (1949) 33 Cal.2d 805, 808; *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 973.) Errors by the clerk or trial court may also open the default and default judgment to challenge on the basis of equitable mistake. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981-982; *Baske v. Burke* (1981) 125 Cal.App.3d 38, 43-47 (*Baske*).)

---

[6]     As explained in *Ferraro*, *supra*, 161 Cal.App.4th at page 534: "A clerk's entry of default . . . is not a judicial act. It reflects the clerk's performance of a series of quintessentially clerical tasks:  ascertaining that the request for default appears in order, confirming that the defendant's time to plead has elapsed, noting the absence of a responsive pleading by him, and signifying these facts by entering the default."

[7]     When a clerk manifestly acts beyond his or her statutorily-conferred powers in entering a default, that action is void, as is any default judgment predicated on it. (*Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1320; *Bristol Convalescent Hospital, supra,* 258 Cal.App.2d 848.) Similarly, when the trial court's action in entering a default judgment is manifestly beyond its statutory powers, the judgment is void. (*Heidary v. Yadollahi*, *supra*, 99 Cal.App.4th at pp. 862-864.)

10

Under the circumstances present here, relief under the doctrine of extrinsic mistake is subject to a "stringent three-part formula."[8] (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981-982.) As explained in *Rappleyea*, "'[t]o set aside a [default] judgment based upon extrinsic mistake one must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case. Second[ ], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[ ], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.'" (*Id.* at p. 982, quoting *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147-1148, italics omitted.)

In *Rappleyea*, the plaintiff arranged for personal service of the complaint and summons on the two defendants, who were Arizona residents. (*Rappleyea*, *supra*, 8 Cal.4th at p. 978.) The defendants chose to proceed in propria persona, but were assisted by an attorney, who phoned the court clerk to determine the fee for filing an answer. (*Ibid.*) The clerk misadvised the attorney that the required fee was $89 (the payment for filing an answer by a single defendant), rather than $159 (the payment for filing an answer by two defendants). (*Ibid.*) Upon receiving the defendants' answer and a check for $89, the clerk rejected them. (*Ibid.*) In December 1990, before the defendants sent back their answer with the correct payment, the plaintiff successfully applied for the entry of their default.

---

[8] Because respondent's motion to set aside the default and default judgment was filed after the six-month period specified in subdivision (b) of Code of Civil Procedure section 473, equitable relief was proper only upon a showing of "exceptional circumstances," as public policy favors the finality of default judgments when the opportunity for such a statutory challenge has passed. (*Rappleyea*, *supra*, 8 Cal.4th at p. 982.)

(*Id*. at pp. 978-979.)  Although the plaintiffs' counsel warned the defendants that they were potentially subject to a default judgment, he misadvised them that no relief from the default was available under subdivision (b) of Code of Civil Procedure section 473.  (*Rappleyea*, *supra*, at p. 979.)  Later, they filed an untimely motion for relief under that provision, which was denied.  (*Id*. at p. 980.)  In January 1992, after one unsuccessful attempt to prove damages, the plaintiff secured the entry of a default judgment awarding him approximately $200,000.  (*Ibid.*)

Our Supreme Court concluded that the record mandated relief from the default and default judgment on the basis of equitable mistake.  (*Rappleyea*, *supra*, 8 Cal.4th at pp. 980-985.)  The court determined that the defendants had demonstrated the existence of a meritorious defense, as their answer contained appropriate denials of the complaint's allegations, and they submitted a declaration from an attorney stating that they had a "very good" defense.  (*Id*. at p. 983.)  The court further determined that the defendants had a satisfactory excuse for failing to file a timely answer, in view of the clerk's "ministerial" mistake regarding the filing fee for the answer.  (*Id*. at pp. 982-983.)  The court also found that the defendants had acted diligently in seeking to set aside the default, observing that the plaintiff misled them regarding their right to relief from the default, that they acted promptly to set aside the default after they recognizing its consequences, and that the plaintiff's dilatory conduct in seeking a default judgment weakened any claim he might have had that relief from the judgment was prejudicial to him.  (*Id*. at pp. 983-984.)

In holding that relief was proper, the court noted with approval the discussion of equitable mistake in *Baske*.  (*Rappleyea*, *supra*, 8 Cal.4th at p. 983.)  There, the defendant was an elderly woman proceeding in propria persona.

12

(*Baske*, *supra*, 125 Cal.App.3d at pp. 40-41.)  After being served with the complaint, she asked the clerk to file certain responsive documents she characterized as ""'"a pleading for [her] rights,"'""' but the clerk did not do so, and entered a default at the plaintiff's request.  (*Id*. at p. 42.)  Following the issuance of a default judgment, the defendant secured assistance of counsel.  (*Ibid.*)  Almost a year and a half after entry of the clerk's default, she filed a motion to set aside the default judgment, which the trial court granted.  (*Ibid*.)  In affirming that ruling under the doctrine of equitable mistake, the appellate court concluded that the defendant's responsive documents set forth a meritorious defense, that the clerk erred in failing to recognize them as an answer, and that the "passage of time" between the entry of default and the motion to set aside the default judgment did not bar equitable relief.  (*Id*. at p. 46.)

B.  *Statutory Framework Regarding Nonjudicial Foreclosure Sales*

As the application of the doctrine of extrinsic mistake here implicates the statutes specifying respondent's potential liability, as the trustee of a trust deed, for the conduct of a nonjudicial foreclosure sale, we describe those statutes. Generally, Civil Code section 2924 through 2924k set forth a "'comprehensive scheme'" governing such sales "pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813-814.)  To initiate the nonjudicial foreclosure process, the 'trustee, mortgagee, or beneficiary, or any of their authorized agents,' must record a notice of default and election to sell. ([Civ. Code,] § 2924, subd. (a)(1).)" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 509, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (Feb. 18, 2016, S218973) __ Cal.4th __, __ [2016

13

Cal. LEXIS 956, at *37, fn. 13].)  The scheme further specifies the trustee's conduct of the sale and the notices that must be given in connection with it.**9**

Under the statutory scheme, "[t]he trustee [of a deed of trust] is not a true trustee with fiduciary duties, but rather a common agent for [pertinent parties]. . . . The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.  No other common law duties exist." (*Kachlon*, *supra*, 168 Cal.App.4th at p. 335, citation omitted.)

In 1995, the Legislature supplemented the statutory scheme with Civil Code section 2924*l*, which establishes a "limited procedure" by which a trustee may avoid liability for damages or attorney fees in actions relating to nonjudicial foreclosure sale. (*Kachlon*, *supra*, 168 Cal.App.4th at p. 351.)  Under that statute, when named as a defendant in such an action, a trustee may "at any time . . . file a declaration of nonmonetary status." (Civ. Code, § 2924*l*, subd. (a).)  The declaration must state, inter alia, the trustee's "reasonable belief that it is named as a defendant . . . solely in its capacity as trustee and not due to its acts or omissions." (*Kachlon*, *supra*, 168 Cal.App.4th at p. 350; Civ. Code, § 2924*l*, subd. (b).)**10**  Unless another party objects within 15 days, "[t]he trustee may

---

**9**　　 "After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale.  [Citations.]  After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale.  [Citations.]  The trustee may postpone the sale at any time before the sale is completed.  [Citations.]  If the sale is postponed, the requisite notices must be given.  [Citations.] . . . The property must be sold at public auction to the highest bidder.  [Citations.]" (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

**10**　　 Subdivision (b) of Civil Code section 2924*l* states:  "The declaration of nonmonetary status shall set forth the status of the trustee as trustee under the deed of trust that is the subject of the action or proceeding, that the trustee knows or *(Fn. is continued on next page.)*

14

thereby avoid participation in the lawsuit . . . , and also avoid liability for damages and attorney fees." (*Kachlon*, *supra*, at p. 350; Civ. Code, § 2924*l*, subds. (c), (d), (e).)[11] If no party timely objects to the declaration, the trustee may not be required to participate in the action absent a successful motion attacking the declaration under Code of Civil Procedure section 473. (Civ. Code, § 2924*l*, subd. (e).)[12]

---

maintains a reasonable belief that it has been named as a defendant in the proceeding solely in its capacity as a trustee under the deed of trust, its reasonable belief that it has not been named as a defendant due to any acts or omissions on its part in the performance of its duties as trustee, the basis for that knowledge or reasonable belief, and that it agrees to be bound by whatever order or judgment is issued by the court regarding the subject deed of trust."

[11] Subdivisions (c), (d), and (e) of Civil Code section 2924*l* provide in pertinent part: "(c) The parties who have appeared in the action or proceeding shall have 15 days from the service of the declaration by the trustee in which to object to the nonmonetary judgment status of the trustee. Any objection shall set forth the factual basis on which the objection is based and shall be served on the trustee. [¶] (d) In the event that no objection is served within the 15-day objection period, the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards . . . for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is the subject of the action or proceeding. [¶] (e) In the event of a timely objection to the declaration of nonmonetary status, the trustee shall thereafter be required to participate in the action or proceeding."

[12] Subdivision (e) of Civil Code section 2924*l* provides in pertinent part: "[I]n the event that the parties elect not to, or fail to, timely object to the declaration of nonmonetary status, but later through discovery, or otherwise, determine that the trustee should participate in the action because of the performance of its duties as a trustee, the parties may file and serve on all parties and the trustee a motion pursuant to Section 473 of the Code of Civil Procedure that specifies the factual basis for the demand. Upon the court's granting of the motion, the trustee shall thereafter be required to participate in the action or proceeding[.]"

15

C. *Analysis*

We find no error in the trial court's decision to set aside the default and default judgment. As explained below, the record supports relief on the basis of extrinsic mistake under the three-part test set forth in *Rappleyea*.

### 1. *Meritorious Defense*

We conclude that respondent demonstrated a meritorious defense to the claims asserted in the complaints, which asserted claims based on alleged irregularities relating to the foreclosure sale of the Glen Ivy property. The original complaint alleges that "without giving the proper notices," respondent and Center Bank "improperly foreclosed" on the property, notwithstanding the existence of a bankruptcy stay. The first amended complaint similarly alleges that respondent and the other defendants "caused a foreclosure on the . . . [p]roperty while SG was in bankruptcy, thereby violating the automatic stay," but omits any reference to lack of proper notices.

Respondent's declaration of nonmonetary status under Civil Code section 2924*l*, coupled with the evidence supporting its motion to set aside the default and default judgment, suffice to show a meritorious defense regarding the alleged misconduct. The declaration of nonmonetary status, executed under penalty of perjury by attorney Stone, asserted respondent's "reasonable belief" that the original complaint alleged no specific wrongful act by it. In view of that assertion, the declaration effectively denied that respondent, as trustee, had engaged in any of the alleged improper conduct regarding the foreclosure sale, including the failure to provide required notices. Furthermore, in seeking relief from the default and default judgment, respondent submitted evidence that contrary to the

16

allegations in the complaints, the foreclosure sale occurred *after* the bankruptcy proceeding had been dismissed.[13]

In addition, respondent's unchallenged declaration of nonmonetary interest established a meritorious defense to the relief sought in appellant's application for a default judgment, which requested $3,000,000 in damages plus pre-judgment interest. As discussed above (see pt. B. of the Discussion, *ante*), the declaration of nonmonetary interest shielded respondent from liability for damages to appellant.

### 2. *Satisfactory Excuse For Not Presenting Defense*

Like the defendants in *Rappleyea* and *Baske*, respondent demonstrated a satisfactory excuse for not presenting its defense, namely, the mistaken entry of a default and default judgment. For the reasons discussed below, respondent's unchallenged declaration for nonmonetary interest shielded it from the default and default judgment, notwithstanding respondent's failure to file any pleading or motion ordinarily required to avoid the entry of default, as specified in Code of Civil Procedure section 585, subdivision (b).

Generally, "a specific statutory provision relating to a particular subject controls over a more general provision." (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 270.) The procedures for securing entry of default and a default judgment, as set forth in Code of Civil Procedure section 580, 585, and 587, are thus displaced in some circumstances by more specific statutes. (See *Harbour Vista, LLC v. HSBC Mortage Services Inc.* (2011) 201

---

[13] Respondent also presented evidence that C & H, as a Nevada corporation, lacked standing to maintain an action because it was not certified to transact business in California (Corp. Code, §§ 2105, subd. (a), 2203, subd. (c)).

Cal.App.4th 1496, 1502-1506 [concluding that Code of Civil Procedure section 764.010, which governs quiet title actions, bars default judgment against defendant in default due to failure to answer complaint, and obliges court to receive evidence offered by that defendant before rendering judgment].) That is the case here.

Civil Code section 2924*l*, by its plain language, excuses a trustee from participation in an action after an unchallenged declaration of nonmonetary interest has been filed, subject to limited qualifications, and shields that trustee from liability for monetary damages. Subdivision (d) of Civil Code section 2924*l* provides that after the filing of such a declaration, a trustee "shall *not* be required to participate any further in the action or proceeding," and "shall *not* be subject to any monetary awards . . . for damages . . . ." (Italics added.) An unchallenged declaration thus renders the trustee a nominal defendant not subject to a judgment for damages. Because the filing of an unchallenged declaration in response to the complaint exempts the trustee from participation in the action, it cannot be required to file an answer or other responsive pleading to the complaint in order to avoid a default and a default judgment awarding monetary damages. Accordingly, the clerk erred in entering respondent's default, as the court's records then disclosed respondent's declaration, coupled with the absence of a timely objection or order setting aside the declaration under Code of Civil Procedure section 473. (See *Ferraro*, *supra*, 161 Cal.App.4th at pp. 535-539 [in probate action, clerk erred in entering default of party -- though nominally designated as a defendant -- aligned with plaintiff and against whom no proper ground for a judgment had been

18

established].)  For similar reasons, the trial court erred in entering the default judgment against respondent.[14]

### 3. *Diligence In Seeking to Set Aside Default and Default Judgment*

Respondent also established that it acted diligently to set aside the default and default judgment after discovering them.  Courts have found equitable relief from a default and default judgment warranted when the defendant's failure to participate in the action stemmed from a reasonable belief that a third party would assert an adequate defense.  (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855-856.)  In such cases, the court assesses the defendant's diligence in light of whether "'the defendant was reasonably justified under the circumstances in [such] reliance.'"  (*Roussey v. Ernest W. Hahn, Inc.* (1967) 251 Cal.App.2d 251, 255-258, quoting *Weitz v. Yankovsky*, *supra*, 63 Cal.2d at p. 855.)  Here, respondent was entitled to rely on its statement of nonmonetary interest -- to which appellant did not object -- as a complete defense to any attempt to secure a monetary judgment, by default or otherwise.  Moreover, as set forth below, appellant's failure to serve respondent's counsel with the request for entry of default, the request for entry of default judgment or the judgment itself left counsel unaware of the need to seek relief.

---

**14**     Before the trial court, appellant maintained that under Code of Civil Procedure section 2924*l*, respondent was required to submit a new declaration of nonmonetary interest after the filing of the first amended complaint.  That representation was incorrect, as the statute expressly states that an unchallenged declaration exempts the trustee from further participation in the "action or proceeding," and obliges other parties to seek relief regarding the declaration under Code of Civil Procedure section 473.  (Civ. Code § 2924*l*, subds. (d), (e).)  On appeal, appellant has abandoned the contention.

Respondent submitted unchallenged evidence that after the declaration of nonmonetary status was filed, its counsel was unaware of the default proceedings. Code of Civil Procedure section 587 provides that "[a]n application by a plaintiff for entry of default under subdivision . . . (b) . . . of [Code of Civil Procedure] section 585 . . . shall include an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record . . . ." As explained in *Slusher v. Durrer* (1977) 69 Cal.App.3d 747, 755, the statute was enacted "to prevent the taking of a default against an unwary litigant." Furthermore, a party applying for a default judgment is required to use a form document that includes a declaration that the completed form has been mailed to the defendant's counsel of record. (Cal. Rules of Court, rule 3.1800(a); Judicial Council Form No. CIV-100; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 164, p. 605.)

Although the record shows that appellant mailed respondent a copy of its application for entry of default by the clerk, there is no evidence that it served respondent's counsel. Appellant's applications for entry of default lack the affidavit attesting that they had been mailed to respondent's attorney, as does his completed form application for entry of a default judgment. Furthermore, in support of the motion to set aside the default and default judgment, respondent's counsel stated in a declaration that he first learned of the default proceedings when appellant attempted to levy on respondent's bank accounts. On appeal, appellant does not challenge that showing or suggest that it provided notice of the default proceedings to respondent's counsel.

In view of the undisputed facts, we conclude that respondent, upon receiving the request for entry of default, was entitled to rely on its declaration of nonmonetary status to shield it from a default and default judgment. For the reasons discussed above (see pt. C.2. of the Discussion, *ante*), that declaration

20

mandated the denial of the request for entry of default. Furthermore, the fact that respondent's counsel lacked knowledge of appellant's applications for entry of default and default judgment necessarily prevented him from providing legal advice to respondent regarding the potential for errors in the default proceedings. As respondent's counsel first learned of the default proceedings when appellant tried to enforce the judgment, the record discloses no lack of diligence by respondent foreclosing equitable relief.

Appellant contends that neither the failure to comply with Code of Civil Procedure section 587 nor the ignorance of respondent's counsel regarding the default proceedings supports equitable relief, as respondent received notice of the application for entry of default by the clerk. We disagree, as the noncompliance with the affidavit requirement and the related ignorance of respondent's counsel were prejudicial.

Code of Civil Procedure section 587 states in pertinent part: "No default under subdivision . . . (b) . . . of [Code of Civil Procedure s]ection 585 . . . shall be entered, unless the affidavit is filed. The nonreceipt of the notice shall not invalidate or constitute ground for setting aside any judgment." In view of that provision, the affidavit requirement, though "mandatory," is not "jurisdictional," that is, "failure to comply with [that] . . . requirement . . . does not deprive the court of jurisdiction to render judgment." (*Harris*, *supra*, 74 Cal.App.3d at p. 102.) For that reason, noncompliance with the affidavit requirement does not support setting aside a default or default judgment absent a suitable showing of prejudice. (*Ibid*.; *Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 534-538.)

Here, the requisite prejudice was shown, as despite its receipt of the request for entry of default by the clerk, respondent was entitled -- as a matter of law -- to believe that no default or default judgment could be entered against it. As noted

21

above, appellant's failure to serve respondent's counsel prevented him from taking precautions against the erroneous entry of a default or default judgment.

The decisions upon which appellant relies are distinguishable, as they involved defendants who were aware of default proceedings and -- unlike respondent -- had no legal basis to believe a default judgment could not be entered regardless of whether they responded to the proceedings. In two of the cases, the appellate court held that equitable relief was unavailable to a defendant who knew that a default had been entered, and placed unreasonable reliance on another person or entity to set the default aside. (*McCreadie v. Arques* (1967) 248 Cal.App.2d 39, 45-48 [trial court did not abuse its discretion in finding defendant failed to demonstrate diligence where he waited over a year after being personally notified of the entry of default judgment to seek relief]; *Cruz*, *supra*, 146 Cal.App.4th at pp. 506-507 & fn. 8 [diligence in attacking default judgment not shown where defendant was served with requests for default and default judgment, "received additional notices regarding the progression of the action . . . yet did nothing about them," and had repeated indications its insurer was taking no action to set aside default].) In the remaining cases, the appellate court concluded that noncompliance with the affidavit requirement in Code of Civil Procedure section 587 was insufficient to support relief from a default judgment because the defendant had adequate notice of the default proceedings. (*Taylor v. Varga* (1995) 37 Cal.App.4th 750, 753-755, 760 [any deficiency in affidavit not prejudicial where defendants' insurer -- which defendants had asked to provide defense in action -- "had actual notice of all the relevant proceedings"]; *Rodriguez*, *supra*, 174 Cal.App.4th at pp. 536-537 [noncompliance with affidavit requirement not prejudicial where defendants and their counsel were informed of default proceedings].) In contrast, respondent was fully entitled to believe that no default

could be entered against it, and respondent's counsel lacked knowledge of the default proceedings. In sum, the trial court did not err in setting aside the default and default judgment.[15]

---

[15]  In a related contention, appellant argues that it was not obliged to comply with Code of Civil Procedure section 587 in seeking a default judgment, noting that a defendant ordinarily is not entitled to notice of proceedings after entry of default (Code Civ. Proc, § 1010). We observe that appellate courts and treatises have interpreted the phrase "application . . . for entry of default" in Code of Civil Procedure section 587 to include applications for entry of a default judgment. (*Rodriguez*, *supra*, 174 Cal.App.4th at pp. 535-538 [discussing cases]; see *Harris*, *supra,* 74 Cal.App.3d at p.100 ["The statute provides that no application for default judgment shall be heard, and no default entered, unless such an affidavit has been filed"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 5:187, p. 5-48 ["As in all defaults," an affidavit complying with Code of Civil Procedure section 587 must be filed with the application for default judgment]; 6 Witkin, Cal. Procedure*, supra,* Proceedings Without Trial, §§ 162, 164, pp. 603-605 ["A copy of the application for entry of default or for judgment on the default must be mailed to the defendant's attorney of record . . . ." )

In any event, apart from any legal requirement regarding notice of default proceedings, the failure to notify defense counsel of those proceedings may justify relief from a default judgment. (6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 162, p. 603.) Here, appellant's failure to comply with Code of Civil Procedure section 587 in connection with the request for entry of default, coupled with his failure to inform respondent and its counsel of the later default proceedings, supported relief on the basis of extrinsic mistake, regardless of any legal requirement of notice relating to those proceedings. (*Turner v. Allen* (1961) 189 Cal.App.2d 753, 758 [lack of adequate notice of default proceedings to defendant and defendant's counsel amounted to extrinsic mistake, notwithstanding absence of legal requirement of notice to counsel].)

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:




WILLHITE, Acting P. J.




COLLINS, J.