Filed 6/2/26  Marriage of Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of TANYA OLIVERA LOPEZ and JOSE LOPEZ. | H053289<br>(Santa Clara County<br> Super. Ct. No. 19FL002881) |
| TANYA OLIVERA LOPEZ,<br><br>        Respondent,<br><br>    v.<br><br>JOSE LOPEZ,<br><br>        Appellant. | |

Respondent Tanya Olivera Lopez filed for a dissolution of her marriage to appellant Jose Lopez, also known as Jose Lopez Loza, while he was incarcerated.[1]  After Jose failed to respond to the petition, Tanya requested a default judgment, which the trial court granted on February 3, 2022.  Two and a half years later, on August 20, 2024, Jose sought to set aside the default judgment, arguing that it was void, entered without notice to him, procured by fraud and perjury, and inequitable.  The trial court denied his request.  Jose now raises many of the same arguments here on appeal, but we conclude that his arguments are not well taken.  We affirm.

---

[1] Because the parties share a surname, we refer to them by their first names for the sake of clarity.  In so doing, we intend no disrespect.

# I.    BACKGROUND

Tanya and Jose were married in March 2008 and have one minor child in common, born in 2012.  They separated in 2018, and Tanya filed a petition for dissolution of marriage in July 2019.  In her petition, Tanya identified and requested confirmation of the following assets as her separate property: a residence located in Gilroy and a business interest in "Olivera Egg Ranch."  She further stated that "[o]ther separate assets and debts" and "the full extent of the community assets and debts" were "unknown at this time," and that a declaration of disclosure would be provided to Jose.  It does not appear from the record that she served this petition on Jose.

In September 2019, Jose was arrested and charged with multiple serious felonies.  The case was resolved by a plea in 2021, after which the criminal court sentenced him to fifty years to life in prison.[2]

On May 5, 2021, the same date as his sentencing hearing, Tanya served Jose with an amended petition for marital dissolution.  The amended petition used identical language regarding the Gilroy real property, Tanya's business interest in Olivera Egg Ranch, and again indicated that additional assets and debts would be identified in her declaration of disclosure.  The proof of service states that Jose was personally served with the amended summons and petition at the Santa Clara County Hall of Justice.

## A.    The Default Proceedings

On August 4, 2021, Tanya submitted a request for entry of default to the trial court using mandatory Judicial Council form FL-165, along with her income and expense declaration and a property declaration.  In the property declaration, Tanya claimed the following assets as her separate property: the Gilroy residence acquired before marriage; furniture, furnishings, and appliances acquired before marriage and located at that

---

[2] Jose's criminal case does not have any bearing on the issues presented in this appeal.  Although the trial court's order and the parties' briefs refer to various aspects of his criminal case, we will refrain from recounting those facts here to respect the privacy of the victims.

property; her business interest in the Olivera Egg Ranch; two cars valued at $10,000, each acquired during marriage; a savings account opened during marriage with a balance of $150,000; and a checking account opened after separation with no funds. Along with her request for entry of default, Tanya provided the court clerk with a postage-prepaid envelope addressed to Jose, as required by Family Code section 2335.5, at the Santa Clara County Main Jail. The clerk mailed the request for entry of default to Jose on August 9, 2021, and the trial court entered Jose's default the same day.

After entry of default, Tanya submitted the following documents in support of a default judgment under Family Code section 2336: (1) a proposed judgment of dissolution (form FL-180) and accompanying notice of entry of judgment (form FL-190), (2) a declaration regarding service of a preliminary declaration of disclosure on Jose (form FL-141), (3) an income and expense declaration (form FL-150), and (4) a declaration for default or uncontested dissolution (form FL-170). On this last form, Tanya checked the box indicating a "[d]efault without agreement," based on the lack of any response from or communication with Jose.

Tanya also filed a stipulation and proposed order appointing a California-licensed attorney as a temporary judge "for the limited purpose of serving as a settlement judge" in the case. Under the terms of the stipulation, the temporary judge would "only be entitled to make orders that are necessary and appropriate for said limited purpose, including, without limitation, execution of judgments and orders regarding marital status, stipulated resolutions of issues, and qualified domestic relations orders." The stipulation further provided that the temporary judge was "not authorized to make decisions, or to issue orders, on disputed issues." The trial court approved the stipulation and ordered the appointment of the temporary judge in the case.

On January 31, 2022, the temporary judge signed the default judgment dissolving the marriage, and the court entered the judgment on February 3, 2022. Pursuant to the judgment, sole physical and legal custody of the parties' minor child was awarded to

3

Tanya with no visitation to Jose. Tanya waived all rights to receive spousal support, and the court terminated any right by Jose to receive spousal support from Tanya. As for the parties' property, the court awarded Jose, as his separate property, a car, a checking account and credit card in his name, and all household furniture, furnishings, and appliances in his possession. The court awarded Tanya the Gilroy residence, her interest in Olivera Egg Ranch, two cars, checking and savings accounts in her name (including the account containing $150,000), and all household furniture, furnishings, and appliances in her possession.

The court clerk mailed the notice of entry of judgment on February 3, 2022 to both parties using the addresses provided by Tanya. Tanya identified Jose's address as the Corcoran State Prison.

### B. Jose's Request to Set Aside the Judgment

On August 20, 2024, Jose, representing himself, filed a request to set aside the judgment on multiple grounds, attaching a detailed supporting declaration. According to Jose, the judgment was obtained by fraud, because Tanya had falsely claimed compliance with her disclosure obligations and had mischaracterized the assets in her property declaration. Jose acknowledged he was personally served with the amended summons and petition in 2021 but claimed he did not receive Tanya's subsequent request to enter default or the trial court's notice of entry of judgment. He argued that Tanya failed to include his booking number or inmate identification number on the mailing addresses she provided to the trial court. He stated, "So, Tanya was granted almost all of our assets. I was able to know this when a friend of a friend was able to obtain the court record of the divorce for me." He did not provide a precise date for when he allegedly learned of the divorce judgment.

Jose further contended that his incarceration and lack of funds for counsel deprived him of access to the court, and that the court made "no meaningful effort[]" to ensure he had notice and an opportunity to be heard before entering default and the

4

default judgment. He also challenged the temporary judge's authority to approve and sign the judgment, arguing that her appointment as a settlement judge did not give her that authority, and arguing that he had not stipulated to the appointment of a temporary judge in the first place. Finally, Jose argued that the judgment was inequitable because it awarded Tanya the entirety of the Gilroy property, her interests in the Olivera Egg Ranch, and $150,000 in savings without considering the community's contributions during marriage.

Both parties eventually retained counsel to represent them in the post-judgment family court hearings. The minute orders for each hearing indicate that Jose's attorney appeared on his behalf.

Tanya opposed Jose's set-aside request, noting that it was untimely and not made within the deadlines set forth in Family Code section 2122.[3] She pointed out that the request failed to state when Jose allegedly discovered the purported fraud: "[Jose] conveniently fails to disclose in his motion the date on which he discovered the facts supporting his request to set aside the Judgment." Tanya also submitted documents showing that Jose executed a quitclaim deed during the marriage confirming the Gilroy property as her separate property, and that her 18 percent interest in Olivera Egg Ranch was a gift from her father. Tanya maintained that the funds in the bank account awarded to her in the judgment were primarily derived from her business interest in the Olivera Egg Ranch, which remained her separate property throughout the marriage.

On reply, Jose's counsel made the following representation: "Jose states under penalty of perjury that he discovered the alleged fraud … in approximately June of 2024." The reply brief was signed by Jose's attorney without any accompanying

---

[3] Family Code section 2122, discussed below, provides that a default judgment may be set aside for fraud, perjury, or nondisclosure within one year of actual or constructive discovery.

signature from Jose under penalty of perjury, and without any further detail regarding the circumstances of discovery.

The trial court held a hearing on Jose's request on January 15, 2025. Although its tentative ruling was to deny the request, it ultimately requested further briefing from the parties on the question of timeliness, stating that the matter would be deemed submitted upon the filing of the supplemental briefs. In his supplemental brief, Jose claimed that his request was timely because he "did not receive [the notice of entry of judgment] until May or June of 2024 when his friend . . . obtained the court file and sent it to [him]."[4]

## C.    The Trial Court's Order

On March 17, 2025, the trial court issued its findings and order. After further consideration of the parties' supplemental briefing, the trial court adopted its tentative ruling and denied Jose's request as untimely. It determined that relief based on fraud under Family Code section 2122 must be sought within one year after the moving party knew or should have discovered the alleged fraud, and that the time started running when the notice of entry of judgment was mailed to Jose on February 3, 2022. The court also found that Jose "knew or reasonably should have known" of Tanya's separate property claims in the dissolution action when he was served with the amended petition in May 2021.

Addressing Jose's claim that he did not receive notice of Tanya's request for entry of default, her disclosures, or the entry of judgment, the court found that there was no "credible evidence to refute the presumption of notice" under Evidence Code section 664, Family Code sections 2333.5 and 2338.5, or Penal Code section 4013, subdivision (a).

---

[4] Jose also argued that his request was not time-barred because Family Code section 2556 grants the court continuing jurisdiction to adjudicate omitted community assets. As the trial court correctly observed, that statute does not apply because the judgment did not omit any of the disputed assets—it adjudicated them. Jose does not challenge this aspect of the trial court's ruling on appeal.

6

The court also found that, even if the request had been timely, Tanya had submitted sufficient evidence establishing that her separate property claims were "presumptively true." Finding no legal or equitable basis to set aside the judgment, the court denied Jose's request.

Jose timely appealed.

## II. DISCUSSION

On appeal, Jose largely reiterates the arguments he presented to the trial court: i.e., the default judgment was void, entered without notice to him, obtained by fraud, perjury, and non-disclosure, and inequitable. We will address these arguments in turn.

### A. Standard of Review

A trial court's ruling on a request to set aside a judgment of dissolution of marriage is reviewed for abuse of discretion. (*In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273, 284 (*Jacobs*); *In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566 (*Diamond*).) "The test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citation.]" (*Jacobs*, at p. 280.)

The court's factual findings are generally reviewed under the substantial evidence standard. (*Diamond*, *supra*, 106 Cal.App.5th at p. 566.) " '[U]nless the [family] court makes specific findings of fact in favor of the losing [party], we presume the [family] court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.' [Citation.]" (*Id.* at pp. 566-567.)

"The issue of whether a judgment is void on its face is a question of law, which we review de novo. [Citations.]" (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961.)

### B. Whether the Default Judgment was Void

Jose advances two bases for contending that the judgment was void. First, he argues that the temporary judge who signed the judgment lacked the authority to do so

7

because Jose did not consent to her appointment, and because the appointment order did not empower the temporary judge to decide disputed issues. Second, he argues that the judgment was entered without proper notice to him, in violation of his due process rights.

Code of Civil Procedure section 473, subdivision (d) allows a trial court to set aside a void judgment at any time, but we discern no grounds for the court to have done so here.

### 1. Authority of Temporary Judge

Although a "stipulation of the parties litigant" is required for a member of the bar who is not a judge to serve as a temporary judge (Cal. Const., art. VI, § 21), a party in default is not considered a "party litigant." (See *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 10, fn. omitted [petitioner's default meant that he "was not a party litigant, and the stipulations executed by the applicants for temporary support were sufficient to empower the commissioner to act as a temporary judge"].) As such, Jose's consent to the appointment was not required. The stipulation signed by Tanya alone was sufficient. (*Ibid.*)

As for the scope of the temporary judge's authority, Jose's default also meant that there were no "disputed issues" for the temporary judge to resolve. As noted above, the appointment order authorized the temporary judge "to make orders that are necessary and appropriate," including "execution of judgments and orders regarding marital status." The temporary judge here acted within the scope of that authority by approving the uncontested default judgment submitted by Tanya.

Even if we were to assume for the sake of argument that there was some ambiguity in the language of the appointment order, the record here demonstrates that the temporary judge nonetheless had the authority to approve the proposed default judgment based on Tanya's implied consent. A stipulation for appointment of a temporary judge need not be in writing and may be implied by conduct. (See *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575.) By stipulating to the appointment of a temporary judge and

8

then submitting the default judgment for that temporary judge's approval, Tanya implicitly consented to the temporary judge's authority to approve the default judgment. (*Id.* at p. 576.)

In short, we reject Jose's challenge to the temporary judge's authority in this case.

### 2. *Service of Entry of Default and Default Judgment*

Jose does not dispute that he was personally served with the amended summons and petition in May 2021. On appeal, he takes issue only with the later service of the request for entry of default and the notice of entry of default judgment. He points out that Tanya's request for entry of default was addressed to the Santa Clara County Main Jail in August 2021, even though he had already been transferred to the Corcoran State Prison by that time. Thus, he contends he did not actually receive it. He further contends that the February 2022 notice of entry of judgment was defective, even though it was correctly addressed to him at Corcoran State Prison, because it omitted his booking and inmate identification numbers.

The trial court did not find these arguments to be persuasive, and neither do we. First, Family Code section 2335.5 requires the party filing a request for entry of default to provide the clerk with a prepaid envelope addressed to the opposing party at their last known address. There is no dispute that Tanya did so, identifying the Santa Clara County jail (150 W. Hedding Street, San Jose) as Jose's address. (See also Code Civ. Proc., § 587 [requiring service of application for entry of default on a defendant's "last known address"].) Jose does not argue, and the trial court record does not reflect, that he ever filed a written notice of a change of address, as required by the rules. (See Cal. Rules of Court, rule 2.200 [parties must provide notice of change of contact information if that information changes while the action is pending].) When Tanya sought a default judgment months later, Tanya complied with Family Code section 2338.5, subdivision (c) by providing the clerk with a prepaid envelope addressed to Jose, this time at the Corcoran State Prison, with his full name and the following notation: "Attn: Legal

9

Office."  The record shows that the clerk mailed the documents to the addresses provided, and neither was returned to the court as undeliverable.  (Fam. Code, §§ 2335.5, 2338.5, subd. (c) ["The court clerk shall maintain any such document returned by the post office as part of the court file in the case."].)

Although Jose claims that he did not actually receive these documents, that is insufficient to overcome the law's presumption that the respective personnel of the Santa Clara County jail and Corcoran State Prison carried out their statutory duty to deliver the papers to him, as the trial court correctly noted.  (Evid. Code, § 664; Pen. Code, § 4013, subd. (a) [service of process on an inmate presumptively effected by service on the jailer]; see also *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 859 [affirming denial of motion to set aside a default judgment based on presumption that service of the documents mailed to the jail was regularly performed by prison personnel].)  Jose does not explain why booking or inmate identification numbers were required for papers addressed to him at Corcoran, nor does he claim that he actually provided these numbers on any change-of-contact-information forms filed with the trial court under rule 2.200 of the California Rules of Court, or even informally to Tanya.  Having failed to respond to the summons and petition in May 2021 and having failed to apprise the trial court and Tanya of his contact information, Jose was solely responsible for any alleged non-receipt of the trial court filings.

Additionally, we note that as long as service of process has been accomplished, any lack of actual notice does not deprive the court of jurisdiction to render a judgment for dissolution of marriage.  (Fam. Code, § 2335.5 ["A judgment of dissolution . . . shall not be denied solely on the basis that the [mailed] request to enter default was returned unopened to the court"]; see also *In re Marriage of Harris* (1977) 74 Cal.App.3d 98, 102.)

We conclude that the default judgment was not void for lack of notice.

10

## C.     Relief Under Family Code Section 2122

Under Family Code section 2122, the trial court may set aside a judgment of dissolution based on fraud, perjury, duress, mental incapacity, mistake of fact, or noncompliance with financial disclosures.  (Fam. Code, § 2122, subds. (a)–(f).)  A request to set aside based on fraud, "where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding," must be brought "within one year after the date on which the complaining party either did discover, or should have discovered, the fraud."  (*Id.*, subd. (a).)  The same one-year deadline applies to requests based on perjury or noncompliance with the disclosure requirements in Family Code section 2100 et seq. (disclosure of assets and liabilities in divorce proceedings).  (Fam. Code, § 2122, subds. (b) & (f).)  "The party moving for relief under section 2122 bears the burden of proving entitlement to relief. [Citation.]"  (*Diamond*, *supra*, 106 Cal.App.5th at p. 566.)

Here, Jose claims fraud, perjury, and noncompliance (based on Tanya's alleged non-service of filings and alleged mischaracterization of separate and community property) and argues that the trial court erred in determining that the one-year deadline began running when he was served with the notice of entry of judgment on February 3, 2022.  As noted above, Jose informed the trial court that he did not actually discover Tanya's alleged fraud, perjury and noncompliance until "May or June of 2024," when he received the court documents from a "friend of a friend."  Jose therefore contends that the trial court should have found that the deadline began running as of this date of discovery, not the date of mailing more than two years earlier.  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1149 ["[T]he statute of limitations under [Family Code] section 2122 accrues as of the date the plaintiff either discovered or should have discovered *the facts constituting the fraud or perjury*, not the date the plaintiff began to suspect the fraud or perjury."].)

11

The fundamental problem with this argument is that it is unsupported by any evidence, and so we cannot conclude that the trial court abused its discretion in rejecting it. As noted above, the record contains no affidavit or sworn declaration from Jose indicating exactly when or how he supposedly discovered the fraud, perjury, or noncompliance by Tanya. The "friend of a friend" and "May or June of 2024" representations were contained in the opening and reply briefs filed by Jose's counsel, but arguments of counsel are not evidence. It was Jose's burden to prove these facts in the trial court with admissible evidence.

Moreover, these attorney arguments focused solely on the concept of "actual" discovery and did not address the question of when Jose "should have discovered" the alleged fraud, perjury, or non-compliance. The trial court found that Jose "knew or reasonably should have known" of Tanya's separate property claims when he was personally served with the amended petition in May 2021, and Jose offers no rebuttal on this essential point. By May 2021, Tanya had initiated the dissolution proceedings with separate property claims for the Gilroy residence and Olivera Egg Ranch expressly laid out in her amended petition. She subsequently filed her initial disclosures and request for entry of default with the court in August 2021, making these documents public records, accessible to anyone who sought them. A reasonable exercise of diligence at that time, even by someone who was incarcerated, would have revealed the evidence underlying Jose's claims of fraud, perjury, or nondisclosure.

Finally, as already discussed above, Jose provided no evidence to the trial court to overcome the presumption of proper service of the default and the default judgment. Thus, the trial court was entitled to find that the latest date upon which Jose knew or should have known of the basis for any set-aside request was in February 2022, more than two and a half years before he filed it.

The trial court did not abuse its discretion in denying Jose's request for relief under Family Code section 2122.

12

### D. Other Equitable and Due Process Arguments

Jose also raises an equitable argument and a due process argument against the default judgment, both of which are unavailing.

First, he contends that the judgment is unconscionable because the trial court failed to achieve a fair division of community property, instead awarding all substantial assets to Tanya. This argument is foreclosed by Family Code section 2123, which expressly provides that "a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable." (*Ibid.;* see also *Diamond, supra*, 106 Cal.App.5th at p. 573 [summarizing cases applying section 2123.])

Moreover, the judgment is supported by substantial evidence in the record that the assets confirmed as Tanya's separate property were either acquired before marriage or gifted to her as her separate property during marriage. Any rents, issues, and profits arising from these assets were also separate property. (Fam. Code, § 770, subd. (a).) Because the parties' assets consisted primarily of Tanya's separate property, the record contains no evidence that the trial court failed to achieve an equal division of community property.

Second, Jose contends that he was denied due process because the trial court decided his set-aside request without holding an evidentiary hearing. Not only does Jose fail to make any showing that he was entitled to an evidentiary hearing or even explain what he would have presented at such a hearing, but he also fails to show that he requested an evidentiary hearing or otherwise raised this issue with the trial court in the first instance. He has therefore forfeited this argument on appeal. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464.)

### III. DISPOSITION

The order denying Jose's request to set aside the judgment is affirmed. Tanya is entitled to her costs on appeal. (Cal Rules of Court, rule 8.278(a)(1).

13

_____

                                                CHUNG, J.*


WE CONCUR:



_____
GREENWOOD, P. J.




_____
GROVER, J.



*Lopez v. Lopez*
H053289

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.